# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

RUNWAY FARMS, LLC,

      Plaintiff,

v.                            Case No: 2:20-cv-979-SPC-MRM

OAKES FARMS, INC.,

      Defendant.

                                      /

## **OPINION AND ORDER**[1]

Before the Court is Plaintiff/Counter-Defendant Runway Farms, LLC's Motion to Dismiss (Doc. 27), seeking to dismiss some of Defendant/Counter-Plaintiff Oakes Farms, Inc.'s counterclaims (Doc. 19). Oakes responded. (Doc. 28). Runway replied (Doc. 34), and Oakes surreplied (Doc. 35). The Court denies the motion (Doc. 27).

## **BACKGROUND**[2]

This is a contract dispute between two agriculture companies. Runway and Oakes executed an agreement governing their collaboration to grow crops

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are the Complaint's allegations, which the Court accepts as true (if well pled) and views most favorably to Oakes. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1345 n.2 (11th Cir. 2021).

(the "Growing Agreement"). The Growing Agreement contains several handwritten annotations that purport to modify its terms. The parties dispute these terms. And they disagree on the nature of their relationship: Oakes claims they were partners; Runway contends they weren't.

Best the Court can tell, Runway agreed to grow certain acreages of four different vegetables. Oakes would manage the marketing and sales of the crops, while Runway managed the farming operations. Oakes was financially responsible for advancing funds that Runway used to support growing and harvesting. Runway characterizes this as a loan to finance Runway's planting, cultivating, and growing of the vegetables; Oakes disagrees.

Oakes also agreed to supervise the harvesting, packing, marketing, and sale of the crop. The parties would split the profits and losses derived from the Growing Agreement. But they cannot seem to agree on the percentages. Oakes says the parties first agreed to a 65/35% (Oakes/Runway) split—later modifying it to a 60/40 split in favor of Oakes. Yet Runway claims profits and losses were to be allocated 75% to Oakes and 25% to Runway.

The arrangement did not go well. Runway failed to grow marketable crops and did not account for expenses relating to funds advanced by Oakes. So Oakes countersued Runway for (1) breach of partnership agreement (derivatively), (2) breach of fiduciary duty of loyalty, (3) settlement of accounts, (4) breach of contract for failing to grow a marketable crop, (5) breach of

contract for failing to account, and (6) unjust enrichment. Florida's Revised Uniform Partnership Act of 1995 ("FRUPA") forms the basis for Counterclaims 1, 2, and 3 (collectively, the "Partnership Counts"). Now, Runway moves to dismiss the Partnership Counts.

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).

## DISCUSSION

Runway contends Oakes has not adequately alleged a partnership between them. Its argument is twofold. First, FRUPA cannot form the basis for the relationship between the parties considering state and federal law. Second, Oakes has not pled the elements reflecting formation of a partnership. Each fails.

## A. Forming a Partnership

To start, Runway contends the Growing Agreement is required by 7 C.F.R. § 46.32(a) since Oakes is a growers' agent. Runway reasons that because 7 C.F.R. § 46.32(a) requires the growing arrangement between Oakes (as a growers' agent) and Runway (as a grower) to be reduced to writing, the resulting document (the Growing Agreement) cannot form a partnership under FRUPA given Fla. Stat. § 620.8202(2).[3]

"An association formed under a statute, other than this act, a predecessor statute, or a comparable law of another jurisdiction is not a partnership under this act." Fla. Stat. § 620.8202(2). "The Uniform Comment to § 620.8202 explains that subsection (2) was drafted to clarify that business associations, including statutory organizations such as corporations, that are organized under other statutes are not partnerships." *In re Manke*, No. 9:15-bk-005370-FMD, 2018 WL 11206119, at *4 (M.D. Fla. June 4, 2018). A "partnership is the residual form of for-profit business organizations," existing "if another form of business does not." *Id.* And courts often equate "unincorporated business association or entity" to "a general or limited partnership or limited liability company." *Cherry Grp., LLC v. D.B. Zwirn*

---

[3] The parties dispute whether Oakes qualifies as a growers' agent. Yet the Court need not address that given its conclusion.

*Special Opportunities Fund, L.P.*, No. 3:08-cv-222-J-34TEM, 2014 WL 2801076, at \*1 (M.D. Fla. June 19, 2014).

Runway's argument misconstrues the Growing Agreement as forming some sort of business association under 7 C.F.R. § 46.32(a). Nothing in the regulation compels that conclusion. Where relevant, it states:

> The duties, responsibilities, and extent of the authority of a growers' agent depend on the type of contract made with the growers. Agreements between growers and agents should be reduced to a written contract clearly defining the duties and responsibilities of both parties and the extent of the agent's authority in distributing the produce. When such agreements between the parties are not reduced to written contracts, the agent shall have available a written statement describing the terms and conditions under which he will handle the produce of the grower during the current season and shall mail or deliver this statement to the grower on or before receipt of the first lot. A grower will be considered to have agreed to these terms if, after receiving such statement, he delivers his produce to the agent for handling in the usual manner.

7 C.F.R. § 46.32(a). While the regulation requires growers' agents to set out certain things in writing (by contract or otherwise), it doesn't demand the growers and their agents create any separate entity through that document.

The Growing Agreement delineates terms of a business arrangement between the parties as required by the regulation. But the Growing Agreement does not create a corporation, LLC, or other form of business association under federal law, which might prohibit the parties from forming a partnership under Fla. Stat. § 620.8202(2). Indeed, Runway cites no authority supporting its

contention the writing required by 7 C.F.R. § 46.32(a) automatically forms a business association under federal law. On the other hand, nothing in the regulation or corresponding statutory scheme bars the formation of a partnership between a grower and a growers' agent. *See S&S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*, 702 F. App'x 874, 878-79 (11th Cir. 2017). So while the simple requirement of a written contract does not create a business association, the parties are free to do so. And there is nothing to stop them from doing that in the same document (i.e., Oakes' theory the Growing Agreement created a partnership). Because the federal law does not govern the formation of any entity, Fla. Stat. § 620.8202(2) does not apply to prohibit forming a partnership under FRUPA.

Even if forming a partnership is not completely barred, Oakes must still allege the existence of one for the Partnership Counts to stand.

## B. Elements of a Partnership

Runway argues Oakes has not adequately alleged that the parties formed a partnership. While Oakes alleged "the parties formed a partnership under" FRUPA, that allegation (by itself) is conclusory and insufficient. (Doc. 19 at 15). So the Court looks closer.

Runway says that the Growing Agreement did not create a partnership. It asserts Runway and Oakes remained separate entities without a partnership name or tax identification number. But none of these things

6

dispose of the partnership issue.  Notably, individuals can form a partnership even without intent.  Fla. Stat. 620.8202(1) (An "association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."); *see also Rafael J. Roca, P.A. v. Lytal & Reiter, Clark, Roca, Fountain & Williams*, 856 So. 2d 1, 4 (Fla. Dist. Ct. App. 2003).

The parties agree a partnership's five elements:  (1) common purpose; (2) joint proprietary interest in the subject matter; (3) the right to share profits; (4) duty to share losses; and (5) joint control or right of control.  *Williams v. Obstfeld*, 314 F.3d 1270, 1276 (11th Cir. 2002)*; Harbaugh v. Greslin*, 436 F. Supp. 2d 1315, 1321 (S.D. Fla. 2006).  Runway disputes only the second and fifth prongs.  So the others are not addressed.

### 1.  Joint Proprietary Interest

First, Runway contends Oakes has not adequately alleged that the parties have a joint proprietary interest in the subject matter.  In support, Runway cites *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. Dist. Ct. App. 1997), for the proposition that a "joint proprietary interest ordinarily requires joint ownership of the subject matter of the contract."  (Doc. 27 at 7).  Oakes argues Runway has misinterpreted *Dreyfuss*.  The Court agrees.

In *Dreyfuss*, one purported partner was to receive a share of gross revenues for time spent obtaining cable contracts.  But the parties never

agreed to work exclusively together to obtain those contracts. And in fact, one

purported partner worked with a competitor without the other knowing. So

there was no joint proprietary interest and, thus, no partnership. That's not

the case here. Runway and Oakes worked together on a common goal—the

profitable growth and sale of crops. The Growing Agreement reflects the

parties' joint interest in this goal, specifying the hundreds of acres of vegetables

the parties agreed to grow together. These allegations are enough to go

forward.

Further, Runway argues that Oakes's security interest in the crops

described in the Growing Agreement somehow suggests a lack of joint

ownership. This argument fails. A partner can have a lien on the property of

a partnership. *See* Fla. Stat. § 620.8404(6) (stating a partner may lend money

to the partnership and have the same rights as a nonpartner lender). A

security interest by a partner and an ownership interest are not mutually

exclusive. Runway has cited no legal authority to the contrary.

What's more, it is unclear whether joint ownership over everything

related to the partnership is even necessary. *See Uhrig v. Redding*, 8 So. 2d 4,

6 (Fla. 1942) ("Upon dissolution of a partnership formed by one supplying all

the capital, and another supplying only his labor and skill, the capital is

returned to the partner supplying it unless the agreement is otherwise."); *Fla.*

*Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536, 539-40 (Fla. Dist. Ct. App.

1974).  In any event, Oakes alleged a joint proprietary interest in the subject matter of the partnership through its description of the parties' agreement to work towards the growth and sale of crops.  Oakes's lien does not convince the Court otherwise.

### 2. *Joint Control*

And second, Runway argues Oakes did not adequately allege the parties had joint control or right to control the partnership.  The Growing Agreement allocated control over specific tasks.  Because Oakes had exclusive control over marketing, sales, and delivery decisions, while Runway had exclusive control over farming operations, expenses, and field repairs, Runway says the parties did not have joint control.  Joint control cannot be established when one party has exclusive control over *the undertaking. Julian Consol. Inc. v. Conrad*, 553 So. 2d 784, 784 (Fla. Dist. Ct. App. 1989).  The Court finds that neither party had exclusive control over the entire undertaking.  Instead, each party had control over certain synergistic duties to advance the undertaking.  This supports—not defeats—joint control.  *Id.*; *see also Progress Rail Servs. Corp. v. Hillsborough Reg'l Transit Auth.*, No. 8:04CV200-T-23EAJ, 2005 WL 1051932, at *3 (M.D. Fla. Apr. 12, 2005) ("Parties can divide control authority by mutual agreement.").

What's more, Runway's contention that there was no joint control because neither party had control over the other misses the mark.  Control

over the undertaking is at issue, not control over a partner. And a party's

ability to bind the other within the context of the mutual undertaking suggests

joint control. *See Pinnacle Port Cmty. Ass'n, Inc. v. Orenstein*, 872 F.2d 1536,

1540 (11th Cir. 1989) (finding that a lender did not have joint control over the

title holder to a property where the lender's actions were designed only to

protect its collateral and each party had independent agents with independent

areas of control and no ability to bind the other with respect to any mutual

endeavor). Because Runway and Oakes each had decision-making authority

on certain aspects of the growing arrangement, they each had the authority to

bind the other in the context of their mutual undertaking—the growth,

marketing, and sale of crops. For example, Oakes had control over marketing

decisions and therefore could bind the venture in marketing undertakings.

Likewise, Runway had control over farming operations and could bind the

mutual undertaking in paying farming expenses or in seeking to maintain and

care for the crop. So the Court finds that Oakes has satisfied its burden and

adequately pled the Partnership Counts.[4]

Accordingly, it is now

**ORDERED:**

---

[4] Finally, the Court notes that Runway's motion did not comply with Local Rule 3.01(g)(2)(C), which requires parties filing an opposed motion to "explain the means by which the conference occurred." The Court encourages counsel to re-read the Local Rules, including especially Local Rule 3.01(g)(2)(C). Failure to comply with the Local Rules may result in the Court striking or denying future motions without further notice.

Plaintiff/Counterclaim Defendant's Motion to Dismiss Counts I, II and III of Defendant's Counterclaim (Doc. 27) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on June 3, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record